## Case No. 14,684.

### UNITED STATES v. BURDETT et al.

[2 Sumn. 336.] [2]

Circuit Court, D. Massachusetts. May Term, 1836.

CUSTOMS DUTIES—PRODUCT OF FOREIGN FISHING.

Where whales are caught, and oil is manufactured, by the crew of an American vessel, the oil is not the product of "foreign fishing," within the purview of the revenue laws of the United States, though it has since been owned, and brought into port, by persons in a foreign service.

Writ of error from the district court of the United States for the district of Massachusetts.

The original suit was debt on a duty bond. At the trial a bill of exceptions was offered, and signed, in substance as follows: The defendants proved, that the ship Helvetius, a ship of the United States, and owned by certain citizens of the United States, sailed from New London on a whaling voyage, on the 4th of July, 1832. That she went into the Pacific Ocean, and on her voyage took 1,500 barrels of spermaceti oil. The Helvetius, with all this oil on board, was stranded on the coast of Oahee, one of the Sandwich Islands, on the 9th of November, 1834. About one third of the oil was lost when the vessel was wrecked, and the voyage was broken up. Of the oil that was saved, one third went to the salvors. The king of the island, John C. Jones (the consul of the United States), and French & Co. were the salvors. The said Jones, and French & Co. were citizens of the United States, then residing on the said island, and transacting business there. The share of the oil belonging to the king, in manner aforesaid, was sold to William S. Hinckley, who is a native citizen of the United States. The crew of the Helvetius were paid off in oil, and their share, being about

[1] [Reported by Hon. William Cranch, Chief Judge.]
[2] [Reported by Charles Sumner, Esq.]

4,000 gallons, was bought by said Hinckley. All the oil thus purchased by Hinckley, was shipped by him on board the barque Don Quixotte, a vessel of the United States, and consigned to Henry Burdett, one of the defendants, who is a citizen of the United States. The bond in suit was given for the duties claimed to be due on the oil consigned to said Burdett as aforesaid.

On this evidence, the attorney for the United States requested the honorable judge to instruct the jury, that the oil aforesaid, within the meaning of the statute of the United States, was oil of foreign fishing, and subject to duty, and that the plaintiffs were entitled to a verdict to the amount then due on the bond aforesaid. But the judge refused so to instruct the jury. On the contrary thereof, the jury were instructed, that the oil in question, being the production of United States fishery, could not be considered, under the circumstances proved, to be of foreign fishery, within the intent and meaning of the laws of revenue, or as such liable to the duties for which that said bond was taken.

Judgment was rendered in favor of the defendants, upon the verdict; and the present writ of error was brought to revise that judgment.

Mr. Mills, U. S. Dist. Atty.

C. P. Curtis and E. G. Loring, for defendants.

STORY, Circuit Justice. My judgment is, that the opinion of the district judge was perfectly correct, as it was laid down to the jury at the trial. The question is, whether this oil was the product of "foreign fishing," within the true intent and meaning of the revenue laws of the United States. Whether foreign or not, depends upon the character of the vessel, and the voyage at the time when the whales were caught, and the oil manufactured; and not upon any subsequent events. Now, it is not disputed, that the Helvetius was an American vessel, duly licensed and employed in the whale fisheries under the authority of our laws; and that the oil was manufactured from whales caught by her crew during her whaling voyage. If so, it was clearly in the sense of our laws, not the product of "foreign fishing," for that means fishing in or by foreign vessels under foreign flags; but strictly domestic fishing, or American fishing. If this oil had been brought into our ports by the Helvetius, there could be no doubt, that it would not be liable to duties, as the product of "foreign fishing." It can make no difference in its original character, that it has come into port in another vessel. The question is not, by whom it is owned, or by whom imported; but whether manufactured by persons in a foreign service, or by persons in the American service. It takes its character from its origin. "Noscitur ab origine." The judgment must, therefore, be affirmed.